CALVIN FRENCH AND JOSIAH FRENCH v. HENRY M. WINSOR, AND L. BILLINGS, *Executor of* ISAAC MATTHEWSON.

[IN CHANCERY.]

*Jurisdiction. Admistrator's Account. Attaching Creditor.*

Except the statute jurisdiction which the probate court has of trusts in the settlement of estates, equity has original jurisdiction of all accounting between trustees and their *cestuis,* and if, by reason of the limited power of the probate court, or its peculiar mode of proceeding, it cannot give relief, resort may be had to chancery.

An administrator after paying the debts of the estate, paid the guardian of a minor who was the sole heir, more than the true balance in his hands, but did not settle his account in the probate court. The amount overpaid was fixed by agreement with the heir after he became of age. *Held,* that the administrator may have a decree in chancery against the heir for the amount so overpaid, the claim being really against the heir, though in form against the estate.

The orator attached certain real estate on a writ of sequestration against the defendant W. which estate the defendant M. afterwards had set off on an execution in his favor. *Held,* that the orator before judgment on his writ, is a mere attaching creditor, and has no such interest in the premises as would authorize him to litigate the title. His legal remedy is perfect and he must pursue it.

APPEAL from the court of chancery, Windsor county, May Term, 1862, KELLOGG, CH. The court of chancery decreed that the defendant Henry M. Winsor should pay to the clerk of court for the orator, Calvin French, on or before the first day of April, 1863, $150, with the interest thereon from the 8th day of August, 1855, together with the orator's costs, and in default of such payment execution to be issued therefor. It was further decreed that the executor of Matthewson should have the right to pay said sum including the costs within the time as above limited, but if he fail to do so, he and all claiming under him or said Matthewson to be excluded and forever barred from claiming under said Matthewson's levy any portion of said sequestered premises as against the orator's execution upon said premises, provided he shall see fit to make such levy. And it was further decreed that the said executor should be jointly holden for the payment of said costs with said Winsor out of the estate of said Matthewson *pari passu* with the other creditors of said estate. From which decree the defendants appealed. The case is sufficiently stated in the opinion of the court.

*Prout and Dunton*, for the defendants.

*S. Adams*, for the orators.

POLAND, CH. J. 1st. Is the orator entitled to a decree against the defendant Winsor?

The original bill, which was against Winsor alone, stated in substance, that in 1828 the orator, Calvin French, was duly appointed administrator of the estate of James Winsor, of which the defendant Winsor, then a minor, was the sole heir. That he proceeded to settle the estate, paid the debts allowed against the estate by commissioners, and some just claims that had not been allowed, and expended some for the support of the defendant Winsor, the heir to the estate. That in 1839, after the payment of all claims against the estate, he paid the balance in his hands, being about $530., after deducting his own charges as administrator, to the guardian of H. M. Winsor, and that afterwards, in 1842, H. M. Winsor received the same from his

guardian.  That as all matters relating to the estate were fully closed and settled, the orator did not suppose it necessary that his account should be settled in the probate court, and therefore had never presented it or made any settlement in that court. That in December, 1845, the defendant Winsor caused the orator to be cited before the probate court to settle his administration account, and subsequently, in fraud of his agreement with the orator, procured an order to be made by the probate court that the orator should present his account for settlement; of which decree the orator was ignorant for more than twenty days, so that he lost his right to appeal.  That the orator refused to account in the probate court as ordered, whereupon the defendant Winsor brought a suit upon the administrator's bond against him and his surety, Josiah French, which suit was entered and pending in Court.

The original bill also alleges that for several years before the death of James Winsor, the orator Calvin French had the care and management of his affairs and business as his agent and attorney, and performed services as such, but that he made no deduction from the assets of the estate therefor when he paid over the balance in his hands to the guardian of H. M. Winsor; and the bill alleges that he was entitled to payment for such services, and that in making such payment he really paid more than was justly due from him.    The bill prayed for an accounting,—for an injunction upon the suit upon the administration bond, and for general relief.

There was no specific prayer for a decree in favor of the orator Calvin French for the payment of any balance due him, if it should be found on taking the account that there was any such balance; and this was unnecessary, if the facts stated in the bill entitled him to such decree, the prayer for general relief would cover it.

The defendant demurred to the original bill, and the case came before this court and the decision is reported in the 24th Vt. Rep.

The court decided that under our system of settling estates and all matters growing out of them in the probate court, the

accounting which the orator prayed for could only be had in that court, and therefore remanded the case to the court of chancery, with direction to retain it there until the accounting should be had in the probate court, and then to proceed with the cause, if the result shall be such as to entitle the orator to have the aid of the court of chancery for the protection of his rights.

After this determination of the original cause in this court, the orator presented his administration account, and his other claims against the estate of James Winsor, to the probate court for adjustment, and the result was that about the sum of four hundred and fifty dollars was found to be due the orator from the estate ; or in other words, it was found that he had overpaid the defendant Winsor that amount, and a decree was made accordingly, from which decree the defendant Winsor appealed to the county court.

After this adjudication in the probate court and appeal, the orator Calvin French presented his petition to the chancellor, setting forth this allowance in his favor, and prayed for a writ of sequestration in said chancery suit to sequester the property of the defendant Winsor to secure the payment of any decree he might thereafter obtain therein against the defendant. The petition was granted, a writ of sequestration issued by the chancellor, and certain real estate of the defendant was sequestered or attached thereon. No question has been made upon this agreement but that this proceeding was regular, and created a lien upon the sequestered estate. In this condition of the litigation, a settlement was negotiated between Calvin French and Winsor, by which Winsor was to pay French the sum of one hundred and fifty dollars, secure the payment of the same by a mortgage on the same real estate sequestered, and all suits between them to be discontinued.

Winsor executed his notes to French, and a mortgage to secure them, on the 8th day of August, 1855, and at the same time gave to him a written agreement that, if such mortgage should prove not to be good security in consequence of any previous encumbrance upon the mortgaged estate, he would " make confession of judgment in proper form on a writ of sequestration

in his favor upon the same property to the amount of said mortgage."

Previous to this settlement, on the 3d day of August, 1855, Isaac Matthewson caused an execution in his favor against Winsor to be levied on the same real estate sequestered and mortgaged, and in December after set off the whole estate upon his execution.

It has not been suggested but that this levy and set off were all in legal form, and valid as againt Winsor the debtor.

Thereupon the orators filed a supplemental bill setting up the said proceedings in the probate court, the writ of sequestration and service, the settlement between Calvin French and Winsor, and the levy and set off upon the execution of Matthewson.

The supplemental bill also alleges that the debt of Matthewson against Winsor was fictitious and fraudulent, or if not, that Matthewson held other ample security for its payment.

Matthewson was made a defendant in the supplemental bill, and the bill prayed that Matthewson's levy and set off might be set aside and vacated, or postponed to the orator's lien by his sequestration.

The defendants answered the supplemental bill, the answers were traversed, and testimony taken.

The orator Calvin French claims that he is entitled to a decree against Winsor for the balance found due to him upon the settlement in the probate court, or if not, that he is at least entitled to recover the one hundred and fifty dollars agreed to be paid on the settlement between him and Winsor.

The defendants insist that the orator is not entitled to any decree against Winsor, because they say that his original bill did not really set up or claim any balance as due to himself, or ask any decree for the payment of any sum due to him, and is therefore insufficient to sustain any such decree; that if this be otherwise, that then, by the settlement with Winsor, and taking his notes and mortgage, his claim was merged; and that if Winsor violated his agreement to confess a judgment on the writ of sequestration, the orator is not entitled to have a decree for the amount, but must resort to his action against Winsor for the

French et al. *v.* Winsor et al.

breach of his agreement. It is said also that if there was a balance found due to Calvin French on the accounting in the probate court, it was due to him, not from H. M. Winsor, but from the estate of James Winsor, and that therefore he could not have a decree for it against H. M. Winsor.

When the case was before this court on the original bill, it is quite evident from the opinion, that it was then regarded as a bill for an accounting, and that had it not been necessary by the rules of law that such account should be settled by the probate court, no difficulty would have existed to proceeding with the case in the court of chancery, and making a final decree for the party in whose favor the balance might be found. But as the court held that the probate court was the proper jurisdiction in which the accounting should be had, they remitted the parties to that court for that purpose, and say that probably that court would be found ample to give the orator full relief in the premises. But as it might turn out otherwise, they directed the court of chancery to retain the cause, so that the orator might invoke its further aid if needful to secure his just rights.

It is not very apparent from the opinion, what contingency would justify the further action of the court of chancery in the cause.

If, on the accounting in the probate court, it should be found that he had nothing in his hands, or if a balance was found against him properly, he could not need the further aid of the court of chancery for any purpose.

If the probate court made improper allowances against him, whereby a balance should be found against him, it is not easily seen how the court of chancery could help him, the matter being within the entire and exclusive jurisdiction of the probate court.

But if, on his settlement in that court, it was found that he had overpaid, and that a balance was due to him, clearly the probate court could give him no aid to recover it. The money he paid to the guardian of Winsor was not paid under any order of the probate court, and no judgment could be rendered in his favor against Winsor for its repayment by that court. He must have the aid of some other tribunal, in order to have any remedy for any balance due him by reason of having paid over too large a sum to Winsor's guardian.

Except that the accounting must be before the probate court, as the law required him to settle his account there, we see no reason why his case was not one of proper equitable jurisdiction.

Whatever funds belonging to the estate of James Winsor remained in the hands of the administrator, after paying all proper claims and charges against the estate, were held by him in trust for H. M. Winsor, who was the sole heir. All accounting between trustees and their *cestuis* was always a proper head of original equity jurisdiction, and except by statute jurisdiction of this particular species of trust is given to the court of probate it would properly come within ordinary chancery jurisdiction, and if by reason of the limited power of the probate court, or its peculiar mode of proceeding, it cannot give relief, resort may then be had to the more ample power and jurisdiction of a court of equity.

It is quite difficult to see how, if a balance should be found in favor of the administrator in the probate court, he could have enforced payment of it by H. M. Winsor, by any suit in a court of law. Although it was, *in substance*, an adjudication between the administrator and the sole heir, *in form*, it was between the administrator and the estate of James Winsor. The money paid by the administrator was paid during the minority of H. M. Winsor to his guardian, and not directly to himself.

These are sufficient to show that serious difficulties lay in the way of sustaining any new legal remedy if it was found that a balance was really due to the administrator, instead of from him. Winsor was claiming a balance due from him, and was endeavoring to enforce it against him by the action of the probate court, and by suit on the bond. The administrator alleged that he had in fact paid over more than he was justly and legally bound to do ; and while the court held that Winsor should be at liberty to pursue the administrator in the ordinary and usual tribunals to enforce his claim, they retained the orator's bill to afford him relief, in case it turned out that he was entitled to recover back, instead of being compelled to pay more.

This, it appears to us, must have been the principal ground, if not the sole one, upon which the bill was directed to be retained in the court of chancery.

French et al. *v.* Winsor et al.

The orator claims that he should have a decree against Winsor for the balance found in his favor by the probate court. But that allowance lost all force as a judgment, or adjudication, by the appeal which vacated it. It may afford some gronnd for belief that there was justly a balance due the orator, but can have no other effect.

The settlement between the parties, upon the faith of which Winsor discontinued his suit on the bond of the administrator, and his appeal from the probate court, is also a sufficient answer to the orator's claim for a decree for any greater sum than was agreed on between the parties. This settlement, we think, must be regarded as the only legitimate evidence of the sum really due to the administrator.

In our opinion there is no substantial objection to giving the orator, Calvin French, a decree to that extent against Winsor.

The language of the agreement, that he will confess a judgment on the writ of sequestration, &c., is exceedingly awkward to express what we think must have been the real understanding and intent of the parties; that the orator should have a decree in the cause for that amount, if it should be found that any incumbrance had been placed upon the mortgaged premises. But the purpose of the provision is so evident, that is, to uphold the lien of the sequestration, if necessary, to the orator's security, that we can make nothing else of it than an agreement that he should have a decree for the amount upon the contingency stated.

Nor do we see any good reason why this should not be enforced by giving the orator his decree accordingly, instead of turning him over to seek redress for a violation of the agreement by an action at law against an entirely worthless defendant. It is the constant practice of all courts to enforce agreements of parties in the nature of stipulations in the particular case.

The defence assumes, that this agreement that the orator might have a decree for the agreed sum, if enforced, gives the orator a decree for a claim not within the scope of his original bill, and for debt really not due from the defendant Winsor, but from the estate of James Winsor.

If this were all true, it would not seem to be very satisfactory, why the orator should not have such a decree, as the defendant Winsor agreed he might have, but it doubtless would prevent the orator from enforcing his lien by his sequestration against an intervening attachment. But it has already been attempted to be shown, that a decree for any balance found due the orator was within the scope of the bill, and though stated somewhat vaguely and argumentatively, we think it cannot properly be said, to be a matter not within the scope of the bill.

It has already been said that if there was any balance due the orator, from the estate, his claim was really for an amount over-paid to H. M. Winsor, and his real claim was against him, though in form against the estate. The settlement and adjustment of this matter between French and Winsor, was really one of sole personal interest between them, and was a liquidation of an ex-isting claim, and not the creation of a new one.

There is no claim that the settlement was collusive, and we see no ground for claim that the sum agreed on was not justly due. There should therefore be a decree for the orator Calvin French against Winsor, for the payment of the sum fixed by their settlement.

2. Is the orator Calvin French entitled to any decree against the other defendant Matthewson or his representative?

The supplemental bill charges, that Matthewson's debt on which his levy was made, was fictitious and fraudulent; but it is now conceded that this allegation is sustained by no proof.

It is charged also that Matthewson's debt was otherwise amply secured by a mortgage. If this were true, it would not at all affect the validity of his lien by his levy. The orator might per-haps by a proper bill, compel Matthewson to first resort to his other security for payment, but this bill is brought for no such purpose.

Nor is there any evidence to prove the allegation to be true.

The orator claims that upon the evidence the court ought to find that when the settlement was made between him and Winsor, Winsor knew of Matthewson's levy, and purposely concealed it, and that by concert between Matthewson and Winsor, it was

intended to keep the levy secret from the orator, and then procure a settlement with him by giving a mortgage upon the same premises covered by Matthewson's levy. There are some circumstances in the case tending to show that Winsor knew of Matthewson's levy, but by no means sufficient to enable us to find the fact against the explicit denial of both Winsor and Matthewson. Beyond this, there is no evidence of any concert or design to keep the levy of Matthewson a secret from the orator, and get him to take a mortgage subsequent to it. It would seem quite conclusive that Winsor could not have so intended, as he agreed if there was any such incumbrance, the orator should keep his lien under his sequestration. There is no ground to say therefore that the incumbrance of Matthewson's levy is in any way fraudulent or illegal.

He must be held to have had notice of the orators sequestration, like any valid attachment on record, but if he had a valid debt he had a perfect right to make a levy on the same estate, and take advantage of any existing defect in the plaintiff's lien, or any subsequent failure to perfect it, and thus obtain the priority for himself, and there is nothing fraudulent, illegal or immoral, in so doing.

If the orator keeps his lien perfected, Matthewson's remains subject to it. But the great difficulty is, that the orator has not yet any such right or interest in the premises, as authorizes him him to litigate the title to them. He is a mere attaching creditor, not yet having obtained a judgment for his debt. If he obtains a judgment, it may be paid, so he may never wish to levy on the premises. If he makes a levy it may not be a good one in law. It has been held in this state that an attaching creditor of real estate, has no such interest in it, as to render him a proper defendant to a bill to foreclose a mortgage upon it.

If the orator's lien was valid, and prior to Matthewson's, and he pursues it properly to the end, so as to keep it legally perfect, he has a perfect remedy at law, and does not need any aid of a court of equity. If he fails to do so, he loses his priority, and a court of chancery ought not, and could not aid him. These questions in the absence of fraud are purely of legal cognizance,

and should be settled in a legal tribunal. Since this case was argued I have met with the case of *Mills* v. *Block*, 30 Barb. S. C. 549, which is a full authority for this determination of the case as to Matthewson.

The decree of the court of chancery is therefore reversed, and the case remanded, with directions to enter a decree in favor of the orator Calvin French against the defendant Winsor, for the payment of the sum of $150. and interest since August 8th, 1855, and the costs accrued in said cause since that date, by some short day to be fixed by the chancellor, and in default of such payment that execution issue therefor.

And to enter a decree that the representative of Matthewson be dismissed with his costs, but without prejudice.